Dimitri S. Bugnolo and Doris C. Bugnolo v. Commissioner.
Bugnolo v. Commissioner
Docket No. 6803-70 SC.
United States Tax Court
T.C. Memo 1971-141; 1971 Tax Ct. Memo LEXIS 188; 30 T.C.M. (CCH) 611; T.C.M. (RIA) 71141; June 16, 1971, Filed. Dimitri S. Bugnolo, pro se, 71 Canonchet Dr., Portsmouth, R. I.Edward De Franceschi, for the respondent. GUSSIS
Memorandum Findings of Fact and Opinion GUSSIS, Commissioner: Respondent determined a deficiency of $940.54 in the petitioners' Federal income tax for the year 1968. The issues are (1) whether petitioners are entitled to deduct a purported loss incurred in the sale of their residence; (2) whether petitioners are entitled to a casualty loss deduction due to water damage to scientific journals; and (3) whether petitioners are entitled to a deduction under section 162 of the Internal Revenue Code of 1954[1] for legal expenses in the amount of $250. *190 Findings of Fact Some of the facts were stipulated and they are so found. Dimitri S. Bugnolo and Doris C. Bugnolo, husband and wife, were residents of Portsmouth, Rhode Island at the time the petition herein was filed. They filed their joint Federal income tax return for the year 1968 with the district director of internal revenue, Providence, Rhode Island. Dimitri S. Bugnolo will hereinafter be called the petitioner. Petitioner has been employed in various scientific capacities over a period of years. Previous to 1968 he was employed for a period of time at the Bell Telephone Laboratories, which employment was followed by a position as senior scientist at the Hudson Laboratories at Columbia University. In or about 1968 he was employed as principal engineer by the Raytheon Corporation in its submarine signal division at Portsmouth, Rhode Island. Prior to moving to Portsmouth, Rhode Island the petitioner lived in the area of Morristown, New Jersey. In July 1963, he purchased a residence for $37,500 and during the approximately four or five years he 612 owned the residence he made no improvements to it. In March 1968, petitioner sold his residence for $40,900. In April *191 or May 1968, when petitioner was residing in a rented house in Newport, Rhode Island, certain scientific journals stored by petitioner in the basement were destroyed when water seeped into the basement. The replacement cost of the destroyed journals was $1,678. Petitioner had acquired the journals through his membership in various scientific societies. About six of the journals had been acquired by him through gifts. During the years that petitioner was a member of the above scientific societies he claimed deductions for the membership fees paid by him. Over the years the petitioner has been purportedly subjected to "harassment" by unnamed parties. Because of such purported "harassment" the petitioner has consulted a psychiatrist. The purported "harassment" occurred while he was employed in the Morristown, New Jersey area and purportedly continued after he found employment with Raytheon Corporation at Portsmouth, Rhode Island. About four months after he went to work for Raytheon Corporation the petitioner retained an attorney and told him to institute suit in the Federal Court to prevent the purported "harassment." Petitioner paid $250 to the attorney in 1968. No action was ever *192 brought and the attorney ceased to act in petitioner's behalf. On his income tax return for the year 1968, the petitioner (1) showed a capital loss of $5,500 in connection with the sale of his personal residence; (2) claimed a casualty loss of $3,480 arising from the damage to his scientific journals; and (3) claimed a deduction of $250 for the attorney's fee paid by him. Respondent (1) disallowed the capital loss claimed by petitioner in connection with the sale of the personal residence; (2) allowed $500 as a casualty loss arising from "loss on furnishings" and disallowed the balance of the claimed casualty loss deduction to the extent of $2,980; and (3) disallowed the deduction of $250 for the legal fee paid in 1968. Opinion In view of petitioner's own testimony that he purchased his residence in 1963 for $37,500 and that he sold it in 1968 for $40,900 without making any improvements to the residence during the intervening years, we fail to see how petitioner can seriously contend that he incurred a loss from the sale. There is no merit in his contention that he somehow incurred a deductible loss because he was forced to sell his residence for less than its true value, allegedly *193 because of the purported "harassment." In any event, a loss incurred on the sale of residential property actually used by the taxpayer as his personal residence at the time of sale is not deductible under section 165(a). See sec. 1.165(a), Income Tax Regulations. We sustain respondent on this issue. The next issue is whether petitioner is entitled to a casualty loss deduction in 1968 under section 165(c) due to the damage caused to certain scientific journals because of water seepage in the basement of his residence. Respondent does not question that some damage to the journals did in fact take place. Petitioner testified at the trial that it would cost him $1,678 to replace the damaged journals and he argued that this figure was the measure of his casualty loss under section 165. Respondent agrees that the replacement cost of the damaged journals is $1,678. In general, the measure of a casualty loss sustained is the difference between the fair market value of the property immediately preceding the casualty and its fair market value immediately thereafter, limited however to the adjusted basis of the property. Sec. 165(b); and sec. 1.165(b)(1), Income Tax Regulations. See Helvering v. Owens [39-1 USTC 9229], 305 U.S. 468 (1939). *194 Petitioner testified that, with some few exceptions, all of the damaged journals were obtained by him as a part of his membership in various scientific societies. Petitioner paid membership fees to these societies, which fees entitled him to receive the journals. Petitioner also testified that he deducted on his income tax returns all of the membership fees paid by him during the years he had accumulated the damaged journals. Consequently, petitioner's adjusted basis in these damaged journals would be zero. See sec. 1.1016-2(a), Income Tax Regulations.[2] It follows, therefore, since the amount of the casualty loss under the 613 statute cannot exceed the adjusted basis of the damaged property, that petitioner is not entitled to a casualty loss deduction in 1968 under section 165. We have considered the few damaged journals acquired by petitioner by gift. Petitioner's adjusted basis in such journals turns both upon their basis to the donor and their fair market value at the time of gift. Section 1015. There is nothing in the record to permit a finding as to these facts and accordingly we cannot determine petitioner's adjusted basis in the journals acquired by gift. Accordingly, *195 petitioner has failed to show that he would be entitled to any casualty loss deduction for those particular journals. We sustain respondent on this issue. The next issue is whether petitioner is entitled to deduct a legal fee of $250 under either section 162 or section 212. Petitioner testified that over the years he has been subjected to continuous "harassment"; that such "harassment" forced him to consult a psychiatrist; that the "harassment" continued when he found employment with Raytheon Corporation; and that in 1968 he retained an attorney to prevent this "harassment." It does not appear that the attorney was able to accomplish anything. He was unable to see anyone at the Raytheon Corporation on his first visit and, after a second visit, he told petitioner there was nothing that could be done and that petitioner really had no right to bring charges in the first place. On this record we cannot find that the legal fee of $250 is a business expense under section *196 162 or is deductible as an expense under section 212. We do not know with any exactitude the nature of this "harassment" or its perpetrators. There is no indication that Raytheon Corporation was ever subjected to any kind of pressure, direct or indirect, in connection with petitioner's employment. Nor is there any evidence to show that the purported "harassment" somehow threatened petitioner's job. There is insufficient evidence in the record to even permit a conjecture as to the nature of petitioner's personal difficulties. We held that petitioner is not entitled to a deduction in 1968 for the legal fee of $250. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. It is obvious that the amounts currently deducted when the journals were first obtained cannot also be considered part of the basis of the journals and again deducted in situations like the one before us.↩